STEVEN G. KALAR
Federal Public Defender
ANGELA MILELLA HANSEN
Assistant Federal Public Defender
1301 Clay Street, Suite 1350N
Oakland, CA 94612
Telephone: (510) 637-3500
Email: Angela_Hansen@fd.org

Attorney for Defendant SULTAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>SAMMY SULTAN,<br><br>  Defendant. | Case No. 17-CR-585-PJH<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

**INTRODUCTION**

Sammy Sultan, chronically depressed and in the depths an untreated 20-year addiction to methamphetamine, made numerous and repeated prank and harassing calls to law enforcement. During the time of the offense conduct, Mr. Sultan was living with his elderly parents and his sister, and he spent most of his days caring for his gravely ill mother.

The parties do not dispute any of the facts of the offense, nor do they dispute any of the guidelines or the enhancements that apply to increase Mr. Sultan's base offense level. Mr. Sultan faces an advisory Guidelines range of 30 to 37 months but the statutory maximum is 24 months. In Mr. Sultan's plea agreement with the government, the parties agree that Mr. Sultan may seek a variance from the recommended advisory range. In the Pre-Sentence Investigation Report (PSR), the probation office recommends that the Court impose a sentence of 24 months in custody followed by one year of supervised release. Mr. Sultan seeks a sentence of 12 months and one day in custody based on the 18 U.S.C. § 3553 factors set forth below.

In addition, Mr. Sultan objects to the Probation Office's recommended special condition of supervision number 10 requiring that he undergo sex offender treatment. This suggested condition is not reasonably related to the nature and circumstance of the offense conduct, nor is it appropriate based on the history and characteristics of Mr. Sultan. Mr. Sultan has not been convicted of a sex offense, nor does anything in his background or history suggest that such an onerous condition should be imposed.

**ARGUMENT**

The Court is familiar with the directives of *United States v. Booker*, 543 U.S. 220 (2005), and 18 U.S.C. § 3553(a). The Court understands that the sentencing guidelines are only one factor of many that the Court must consider in imposing a sentencing in this case. Indeed, the Court must consider the Guidelines range, the nature and circumstances of the offense, the history and

1

characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6). In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court also must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2).

The main question in this case is whether the Court should depart below the statutory maximum sentence of 24 months based on the mitigation identified below and in the PSR. The probation office's report and sentencing recommendation contain a thoughtful analysis of Mr. Sultan's background and history, including a troubled relationship with his father, the stress of providing daily care for a mother who suffered from dementia and a debilitating back condition, a 20-year addiction to methamphetamine and untreated mental health problems. These mitigating factors, and the factors identified below, weigh in favor of a sentence below the statutory maximum sentence of 24 months.

Mr. Sultan's anxiety and depression are interrelated and find roots in his background and history. Mr. Sultan had a "broken relationship" with his father and did not receive the type of care and guidance from him that he needed as a young man. PSR, Recommendation at 2. His interactions with his father were "centered [on] punishment (often corporal punishment)." PSR ¶ 70. His father was traditional in his beliefs, and he treated Mr. Sultan "harshly" as a child. He was also absent from his son's life. Mr. Sultan's father "rarely interacted with the family when he returned home from work" and was emotionally abusive to his wife and children. *Id.* Sultan's relationship with his father remains in disrepair, and yet upon his release from custody, Mr. Sultan will need to help his sister care for his father. During the presentence interview, Mr. Sultan was

insightful and able to recognize that his father's own "troubled" upbringing had "much to do with their inability to emotionally connect." *Id.*

Because of his father's absence when he was a child, Mr. Sultan became extremely close with his mother. When she suffered a back injury and was diagnosed with dementia three years ago, it fell upon Mr. Sultan to provide daily care and comfort to his mother, and to his aging father. Mr. Sultan was tasked with feeding his mother, bathing her, dressing her, turning her in bed, getting her to sit up and scheduling and attending medical appointments with her. In addition, Mr. Sultan was specially trained so that he could administer her much needed in-home medical treatments. PSR ¶ 73.

After he "lost" his mother to dementia, Mr. Sultan's depression and anxiety increased. His addiction grew as well. As his therapist on pretrial release stated, when Mr. Sultan "lost his mom [to dementia], he lost his mind." PSR ¶ 84. His mother's condition and the burden that fell on him to provide her with daily care exacerbated his worsening mental health. PSR ¶ 90. Mr. Sultan turned to methamphetamine to self-medicate. When he was under the influence, his judgment was incredibly impaired. PSR ¶¶ 79, 90. It was in this drug-induced state following his mother's medical decline when Mr. Sultan began to make the calls that are charged in this case. Many of Mr. Sultan's current and verified psychological difficulties, including the offense conduct, can be attributed to his long-term use of this mind-altering drug.[1]

---

[1] Methamphetamine is a horribly destructive and addictive drug. It "increases the release of very high levels of the neurotransmitter dopamine, which stimulates brain cells, enhancing mood and body movement. Chronic methamphetamine abuse significantly changes how the brain functions." *See* National Institute on Drug Abuse, *NIDA InfoFacts: Methamphetamine*, *available at* http://www.nida.nih.gov/InfoFacts/methamphetamine.html. Taking even small amounts of methamphetamine can result in increased wakefulness, physical activity, respiration, blood pressure and heart rate. "Other effects of methamphetamine abuse may include irritability, anxiety, insomnia, confusion, tremors, convulsions, and cardiovascular collapse and death." *Id.*

3

The probation office determined through its investigation that Mr. Sultan appears motivated to address his "mental health and substance abuse" issues. According to the report, the most important step for Mr. Sultan is to commit himself to a "clean and sober lifestyle." PSR, Recommendation at 2. In that regard, the probation office has noted that Mr. Sultan appears "genuinely remorseful for his conduct," and he has the necessary "family support" from his sister to help him take the steps required to change his life's path. *Id.*; *see also* PSR ¶¶ 78-79 (Mr. Sultan's sister believes in her brother's ability to succeed and has been his "primary source of support and accountability.")

None of this is an excuse for what Mr. Sultan did. He recognizes that what he did caused tremendous disruption for emergency service workers. Mr. Sultan is remorseful for his conduct and is willing to commit to treatment so that he can turn his life around. PSR ¶ 93. His remorse and acceptance of responsibility are genuine. It is clear that when Mr. Sultan is sober and not using methamphetamine, he is able to think clearly and make better decisions for himself and for his family. When he was at Cherry Hill detox, for example, he "had a positive attitude" and was "actively participating in self-help groups." His counselor reports that he was also "caring and helpful to others." PSR ¶ 91. But without more intensive treatment, Mr. Sultan relapsed. Because he went to an intake interview for inpatient treatment at New Bridge in Oakland, California under the influence, he was unable to present this more compassionate and caring side of himself. Instead, New Bridge found him to be agitated and aggressive, which are classic signs of a methamphetamine addiction. PSR ¶ 92. It was following his behavior at New Bridge that the magistrate court remanded Mr. Sultan.

Mr. Sultan's ability to make better decisions when sober was illuminated by his conduct last month. Mr. Sultan's mother died on January 17, 2018. The magistrate court temporarily released Mr. Sultan so that he could attend his mother's funeral. Mr. Sultan followed the

4

magistrate court's order and self-surrendered to the United States Marshal Service an hour earlier than required. Mr. Sultan has been in custody for five months now, and he recognizes that his drug addiction led to his current predicament. Because of his addiction, he was remanded to custody five months ago. Because of his addiction, he lost the ability to care for his mother and possibly extend her life, and, because of his addiction, Mr. Sultan lost the opportunity to be there with his mother when she died. This was a devastating loss for Mr. Sultan, but also it was an important lesson learned. Mr. Sultan recognizes that he cannot continue to abuse methamphetamine and that he needs help to stay off this destructive drug.

Requirements on supervised release that Mr. Sultan undergo mental health counseling for anxiety and depression, including intensive treatment for his drug addiction, will provide assurance that Mr. Sultan will not engage in future criminal conduct. In addition, Mr. Sultan's requested sentence is a reasonable sentence and only twelve months below the statutory maximum sentence. A longer sentence would not make any significant difference, especially given his major depression and his need for mental health and drug abuse treatment as discussed above. In addition, Mr. Sultan hopes the Court will consider his attached letter accepting responsibility and a letter from his counselor at Cherry Hill detox in deciding what sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

## OBJECTION TO SPECIAL CONDITION OF RELEASE

Mr. Sultan objects to special condition of supervised release number 10 that is recommended in the final PSR:

> You must participate in sex offender-specific treatment, as directed by the probation officer . . . . As part of the treatment program, you must submit to polygraph or other psychological or physiological testing as recommended by the treatment provider.

Special conditions of supervised release are not to be imposed in a one-size-fits-all manner. Indeed, Congress expressly limited the imposition of special, or discretionary, conditions of

5

supervised release (*i.e.*, those conditions that are not statutorily mandated) to situations in which the particular condition was reasonably related to "the nature and circumstances of the offense and the history and characteristics of the defendant," and the need to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *See* 18 U.S.C. §§ 3583(d) and 3553(a).

Although "[d]istrict judges enjoy broad discretion in fashioning" supervised release conditions, "Congress has nonetheless set limits on the exercise of that discretion." *United States v. LaCoste*, 821 F.3d 1187, 1190 (9th Cir. 2016). There are "three primary constraints" on imposition of supervised release conditions. *Id.* The condition must (1) "be reasonably related to the nature and circumstances of the offense; the history and characteristics of the defendant; or the sentencing-related goals of deterrence, protection of the public, or rehabilitation;" (2) be consistent with the Sentencing Commission's policy statements; and (3) must involve "no greater deprivation of liberty than is reasonably necessary to serve the goals of supervised release." *Id.* at 1190-91 (quotations and citations omitted).

Even if supervised release conditions meet the requirements of deterrence, protection of the public, or rehabilitation of the offender, they still must involve "no greater deprivation of liberty than is reasonably necessary for the purposes" of supervised release. *United States v. T.M.*, 330 F.3d 1225, 1240 (9th Cir. 2003); *United States v. Weber*, 451 F.3d 552, 558 (9th Cir. 2006). Thus, a court must "tailor the condition imposed to the liberty interest at stake." *United States v. Williams*, 356 F.3d 1045, 1052 (9th Cir. 2004). In addition, a condition that invades a citizen's personal security must be reasonable in all circumstances to avoid violating the Fourth Amendment. *See United States v. Kincade*, 379 F.3d 813, 821 (9th Cir. 2004) (en banc).

For these reasons, Mr. Sultan objects to the imposition of a sex offender treatment program

6

as a condition of his supervised release.[3]  First, the presentence investigation uncovered no evidence of sexual deviance that would require such a condition.  In addition, Mr. Sultan is 44 years of age and he has had nothing but age-appropriate relationships with women.  PSR ¶ 75.  Second, the instant offense is not a sex crime.  Mr. Sultan was convicted of making harassing phone calls for which the statutory maximum is two years in custody.  Some of Mr. Sultan's phone calls may have been sexual in nature, with a particular interest in women's feet, but there was no alleged or attempted hands-on conduct of a sexual nature that would merit the imposition of this treatment condition.  Moreover, Mr. Sultan did not possess any illegal or illicit pornography, nor did he act on any of the behaviors he discussed while on the phone with dispatch officers.  Indeed, the offense conduct was fueled by his addiction to a mind-altering drug that he was using in combination with other medications.  As his behavior on pretrial release confirms, the offense conduct can be controlled if Mr. Sultan is able to treat his mental health issues and abstain from the use of methamphetamine.  Adding another layer of treatment for sex offenses is not only unwarranted under the statute, it is unnecessary and inappropriate here.

---

[3]The condition is problematic not only because the record here does not require it, as written, the proposed condition fails also to comply with *United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005) (holding that a defendant retains his Fifth Amendment right against self-incrimination during testing required as a part of sex offender treatment).  In addition, to the extent the condition requires "physiological" testing, it fails to comply with guidance from *Weber*, in which the Ninth Circuit recognized that while the penile plethysmograph could arguably promote one of the stated goals of sentencing, the liberty interest implicated is such that it cannot be imposed without a "thorough, on-the-record inquiry" into whether the degree of intrusion is reasonably necessary to accomplish the stated goals of sentencing.  *Weber*, 451 F.3d at 562-68 (explaining that "plethysmograph testing is exceptionally intrusive in nature and duration;" it "not only encompasses a physical intrusion but a mental one, involving not only a measure of the subject's genitalia but a probing of his innermost thoughts as well.").

# CONCLUSION

For all these reasons, Mr. Sultan respectfully requests that the Court impose a sentence of 12 months and one day in custody, followed by a term of supervised release that includes intensive mental health and drug addiction treatment. He also requests that the Court recommend to the Bureau of Prisons that he be housed at a facility with mental health and addiction counseling available to him that is as close to Oakland, California as possible. Finally, Mr. Sultan requests that the Court reject the probation office's recommended special condition number 10.

Date: February 28, 2018

        Respectfully submitted,
        STEVEN G. KALAR
        Federal Public Defender

        /s/ Angela Milella Hansen
        ANGELA MILELLA HANSEN
        Assistant Federal Public Defender