1 | ALEX G. TSE (CABN 152348)
Acting United States Attorney

2

3 | BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

4 | THOMAS R. GREEN  (CABN 203480)
Assistant United States Attorney

5

6 | 1301 Clay Street, Suite 340S
Oakland, CA 94612
Telephone: (510) 637-3695

7 | Fax: (510) 637-3724
E-Mail: Thomas.Green@usdoj.gov

8

Attorneys for United States of America

9

10 | UNITED STATES DISTRICT COURT

11 | NORTHERN DISTRICT OF CALIFORNIA

12 | OAKLAND DIVISION

13

| UNITED STATES OF AMERICA, | ) NO. CR 17-00585 PJH |
|---|---|
| Plaintiff, | ) **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | ) |
| SAMMY SULTAN, | ) Sentencing Date:   March 7, 2018<br>) Time:   1:30 p.m.<br>) Judge:   Hon. Phyllis J. Hamilton |
| Defendant. | ) |

U.S. SENTENCING MEMORANDUM
CR 17-00585 PJH

## I. INTRODUCTION

The defendant, Sammy Sultan, stands before the Court to be sentenced following his guilty plea to Count One of the Indictment, charging him with making obscene or harassing phone calls, in violation of 47 U.S.C. § 223(a)(1). The charges against Mr. Sultan followed an extended investigation to identify Mr. Sultan as the perpetrator of hundreds of hoax calls to law enforcement agencies in the United States, Canada and Europe. The calls typically involved Mr. Sultan demanding to speak with a female officer, and many times included claims that he was holding a women hostage. On many occasions law enforcement scrambled to respond to the threatening crimes defendant reported, causing substantial disruption to law enforcement offices throughout the United States and abroad.

The United States files this memorandum in support of the sentence recommended by U.S. Probation, and respectfully recommends that the Court sentence defendant to two years in prison followed by a year of supervised release, the maximum period of supervised release permitted by statute.

## II. OFFENSE CONDUCT (PSR ¶¶ 7-20) & CRIMINAL HISTORY (PSR ¶¶ 35-66).

The PSR summarizes the offense conduct in this case, which is not disputed. Defendant made hundreds of the types of calls described in the PSR, with the first known call being in February 2015 to a police station outside of Boston area, and the last know call to a law enforcement agency in Finland in 2017 while on Pretrial Release. *See* PSR ¶18. The calls often included claims that he had escaped a mental institution and was armed, or that he had a hostage bound in a motel room. *See* PSR ¶8. Audible screams could be heard in the background of some such calls, consistent with a recording of a women screaming that was found during the execution of a search warrant at defendant's residence. Law enforcement mobilized substantial resources in response to defendant's calls. One law enforcement agency, the Rensselaer Indiana Police Department, has provided a victim impact statement for the Court's consideration, which is attached as Attachment A to this memorandum. The statement describes the dangerous consequences of even one call, as Mr. Sultan effectively shot down the entire Rensselaer police department for an hour as it scrambled to identify and locate the defendant in response to his claims that he would harm a hostage he had taken. Due to the extreme nature of the threat presented by the call, the dispatcher was unable to answer other incoming calls seeking police aid for real problems,

1

including a reported rape.  Mr. Sultan also called the Rensselaer Mayor's office and made similar claims to the Mayor's secretary, a women untrained in responding to law enforcement distress calls.

Defendant undertook substantial efforts to conceal his identity and location from law enforcement, including using spoofing technology so that his true phone number remained hidden to victims and law enforcement.  *See* PSR ¶13.  The defendant's behavior would have likely continued unabated had law enforcement not been able to obtain information from phone companies identifying defendant's location on account of the emergency response required.  Mr. Sultan speaks with a stilted accent, which enabled law enforcement to ultimately tie Mr. Sultan to the calls being experienced throughout the United States and Canada.  At least 17 states reported such calls, and the FBI was in constant contact with the Royal Canadian Mounted Police for the better part of a year in response to the many dozens if not hundreds of calls made to police offices in Canada.

Defendant has a long criminal history, which is described in the PSR and need not be repeated.

**III.   SENTENCING GUIDELINES CALCULATIONS.**

The government concurs with the PSR's Guidelines calculation of a final adjusted offense level of 15 after three points are subtracted for acceptance of responsibility.  The government contends that defendant should have an additional two criminal history points for his 120 day sentence imposed on February 7, 2005, for receipt of stolen property.  *See* PSR ¶45.  This conviction is exactly 10 years prior to the first known call in this case, and thus "was imposed within ten years of defendant's commencement of the instant offense."  U.S.S.G. § 4A1.2(e)(2).  Counting ten full years back begins with counting one day back from the offense, to February 6, 2015, and a full year back is not counted until you reach the 365th day, or February 7, 2014.  To back track a full year from February 7, 2015, one has to go back a full year, to February 7, 2014, and not stop counting at 364 days, or on February 8, 2014.  By extension, in order to meet the plain words of the section 4A1.2(e)(2), any conviction "within ten years" of the events of February 7, 2015 counts towards defendant's criminal history points, and includes the events of February 7, 2005, when defendant suffered his conviction for receipt of stolen property.  *See* PSR ¶45.  Including two points for defendant's February 7, 2005 conviction raises defendant's criminal history score to eleven (11) points, and establishes a criminal history category of V.

The Guidelines range for offense level 15 and CHC V is 37 to 46 months in prison.  If the Court

agrees that defendant's February 7, 2005 crime does not score criminal history points, he drops to CHC IV, and a guideline sentence of 30 to 37 months. Under either calculation, the applicable guideline range is in Zone D of the Sentencing Table, which eliminates probation as an option under the guidelines. And under either calculation, defendant's guideline sentence reduces to a 24 month sentence on account of two years being the statutory maximum sentence defendant faces for his crime.

## IV. SENTENCING RECOMMENDATION

### A. Applicable Law

Section 3553(a) directs courts to consider a number of factors in determining an appropriate sentence. In this case, these factors indicate that a low end guideline sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The key factors are the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), the need to afford adequate deterrence to criminal conduct, *id.* § 3553(a)(2)(B), and the need to protect the public from further crimes of the defendant, *id.* § 3553(a)(2)(C).

Although the Supreme Court's decision in *Booker* has rendered the Sentencing Guidelines advisory, the Guidelines still remain the "starting point and initial bench-mark" for sentencing. *Kimbrough v. United States*, 552 U.S. 85, 108, (2007) (internal quotation marks and citation omitted); *see Carty*, 520 F.3d at 991 (en banc); *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011). While there is no presumption of reasonableness for a Guidelines range sentence, if a district judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Carty*, 520 F.3d at 991-992 (citing *Gall v. United States*, 552 U.S. 38, 50, (2007)); *see also United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) ("district court must start with the recommended Guidelines sentence, adjust upward or downward from that point, and justify the extent of the departure from the Guidelines sentence."). As the Supreme Court recognized in *Gall*, "a major departure should be supported by a more significant justification than a minor one." 552 U.S. at 50. Finally, "[a]s a general rule, the preponderance of the evidence standard is the appropriate standard for factual findings used for sentencing." *United States v. Armstead*, 552 F.3d 769, 777-78 (9th Cir. 2008); *see, e.g.*, *United*

*States v. Treadwell*, 593 F.3d 990, 1001 (9th Cir. 2010).

### B. The Sentence Recommended by the Probation Office Vindicates the Interests of 18 U.S.C. § 3553(a).

The defendant's crime persisted for more than two years. A sentence at the statutory maximum term of two years is required to adequately punish defendant for the scope of his conduct and deter his future crimes, which persisted even while on pretrial release and after multiple trips by the Hayward police to his residence. A two year sentence is also required to protect the public from future crimes, as defendant has already demonstrated his willingness to violate pretrial release terms and engage in efforts to conceal his scheme from law enforcement. Defendant also only faces a maximum term of one year of supervised release to follow his incarceration. A two year prison term followed by a year of supervision will provide three years, and only three years, to provide defendant with treatment for any dependency or mental health issues he faces. A shorter prison term in this case hinders the opportunity to provide defendant with services that may be needed to reduce the likelihood of recidivism. A two year term represents a modest prison term in comparison to the scope of defendant's crimes and the guideline sentence he would face but for the statutory maximum sentence allowed.

Defendant has also agreed to the expanded search condition referenced in the PSR, an important condition in light of defendant's crimes in this case.

## V. CONCLUSION

In full consideration of the defendant's history and characteristics together with the goals of sentencing, the government respectfully requests that the Court sentence the defendant to a two year sentence, followed by one year of supervised release, with the special conditions recommended by the Probation Office, and a $100 special assessment.

DATED: February 28, 2018                                  Respectfully submitted,

                                                          ALEX G. TSE
                                                          Acting United States Attorney


                                                          _____/s/_____
                                                          THOMAS R. GREEN
                                                          Assistant United States Attorney

4

# ATTACHMENT A



**VICTIM IMPACT STATEMENT**

Victim: Matt Anderson

Rensselaer Indiana Police Department

USAO Number: 2016R01400

Court Docket Number: 17-CR-00585

I (Matthew A. Anderson) am writing on behalf of the City of Rensselaer to describe the impact that Mr. Sultan had on our Police Department. Mr. Sultan called multiple times tying up a dispatcher for nearly an hour. As a small department with often only one dispatcher working, this is crippling to our operations. During the calls Mr. Sultan claimed to have a hostage and that he was armed and if the dispatcher did not listen to him, he would harm the hostage. Due to this the dispatcher could not hang up the phone to answer other calls that came in which would include any 911 or other emergency calls.

In addition to 100% of our dispatch being occupied by Mr. Sultan, multiple officers were trying to locate him due to the serious nature of his call and to try and come to the aide of the hostage he claimed to have. Again, with a small department of only 11 officers and normally only two or three on duty during the day, this brings everything to a stop. A check of the calls that were received by dispatch during the time she was staying on the phone with him include a reported rape, an intoxicated subject acting disorderly and a trespassing complaint. All of these calls had to be pended while officers tried to locate Mr. Sultan and his hostage.

Further, Mr. Sultan called the Mayor's office and spoke with his secretary. She was not sure how long Mr. Sultan was on the phone with her but she stated it was an extended period of time. These calls were similar in nature to the calls made to our dispatch center. This type of call can be very stressful to someone like this who is not trained in handling these types of calls.

After receiving this paperwork we did some searching online for Mr. Sultan and found several articles stating that this was an extensive ordeal involving a large number of police departments. It is my opinion that Mr. Sultan needs to be made an example of to deter any others from committing these types of acts.